## LUMMERY *v.* BRADDY.

Where one of the questions at issue in a cause in equity, involves the character of proceedings in an action at law and the questions therein at issue and decided, and the transcript of the proceedings in the action at law, is not made a part of the record, the appellate court can only ascertain what matters were put in issue and decided in the former suit, from the allegations of the pleadings in the chancery suit, not responded to, or expressly admitted by the other party.

Where in a proceeding in equity, to restrain the respondents from flowing back the waters of the Nodaway river, by their mill dam, upon the land and mill site of the complainant, on the ground that certain proceedings under a writ of *ad quod damnum*, and the license granted to the respondents to build their dam, did not preclude the right of complainant to damages resulting to her from the acts of respondents, nor her right now to claim an injunction against them, to restrain them from flowing back the water of the river upon her mill-site, because she was no party to said proceedings, it appeared that one of the complainants, and the husband of the other, was made a party to the proceedings under the writ of *ad quad damnum*, and had due notice thereof; that upon the return of the inquisition, he was duly sumoned to show cause why the said license should not be granted; that no objection being made, a license was granted to respondents to build their dam eight and a half feet high; that the land was in the possession of the husband at the time of the proceedings under the writ of *ad quod damnum*, claiming to hold it by right of pre-emption; that it was entered with his money and the title taken in the name of the wife, without her knowledge, during the progress of the said proceedings; and that it remained in the possession of the husband, after its purchase in the name of the wife; *Held*, That the complainants were bound by the proceedings under the writ of *ad quod damnum*, and the judgment of the district court rendered thereon, granting license to respondents to erect their mill dam.

Where under a bill to restrain the respondents from flowing water upon the lands of the complainant, by their mill dam, the district court ordered the respondents to remove their dam, and directed that in case the same is not removed within thirty days, the sheriff remove the same; *Held*, That as there was no prayer in complainant's bill to that effect, the court erred in ordering a removal of the dam.

Where a license is granted for the erection of a mill dam, under a writ of *ad quod damnum*, the proceedings amount to a condemnation of so much of the land, and of the right of the owner thereto, as may be affected by the flowing back of the water, when the dam is raised to the height prescribed.

A judgment for damages caused by the flowing of lands by a mill dam,·

which were not foreseen and estimated by the jury of inquest under a writ of *ad quod damnum*, afford no ground for an injunction againt the owner of the mill dam, nor does it affect his rights under his license.

## *Appeal from the Page District Court.*

### Monday, April 4.

In Chancery, for an injunction to restrain defendants from flowing back the waters of the Nodaway river, by their mill-dam, upon the land and mill-site of complainants. On the hearing, a perpetual injunction was granted as prayed for. Defendants appeal. The material facts appear in the opinion of the court.

*John A. Kasson*, and *D. O. Finch*, for the appellants.

*Cole & Jewett*, for the appellees.

Stockton, J.—The complainants base their right to the injunction, claimed by them against the defendants, upon the fact that Almira Lummery, since the first day of January, 1856, has been the owner of the land on which their mill-site is located; and the further fact, that at the September term, 1856, of the district court of Taylor county, they recovered a judgment against the defendants, in an action at law, in right of said Almira, for the damages sustained from the flowing back of the waters of the Nodaway river upon them by the defendant's dam. The defendants answer, that the judgment recovered against them by complainants, was for obstructing and delaying complainant's work, and destroying their mill-site by back water upon their dam.

It will be seen that an important question to be determined is the character of the proceedings in the suit at law, and the questions therein at issue and decided. The record in this case, shows no transcript of the proceedings in the suit at law between the parties, in the district court of Taylor county. This transcript is referred to by complainants, in their replication to defendant's answer, as "*Exhibit B*," accompanying

Lummery v. Braddy.

complainant's bill, and made part thereof, and as furnishing evidence of the questions put in issue by the parties, and decided in complainant's favor in said suit at law.   No transcript of said proceeding, however, accompanies their bill of complaint.   The complainants, suggesting a diminution of the record at the June term of this court, 1858, obtained a writ of *certiorari* to the clerk of the district court of Page county, to perfect the record in this suit, by sending up such transcript.   The clerk, in response to said writ, certifies to this court that the records in his office do not show that any transcript of the proceeding in the suit at law between the parties, was ever filed in said cause; and that the same was never filed, as shown by the records in his office.

In the absence of any record of these proceeding in the action at law, we can ascertain what matters were put in issue and decided therein, only from the allegations of the pleadings not responded to, or expressly admitted by the other party.

It is claimed that the proceedings under the writ of *ad quod damnum*, and the license granted to the defendants to build their dam, did not preclude the right of said Almira to damages for the injuries resulting to her from the acts of defendants, nor her right now to claim an injunction against them, to restrain them from flowing back the water of the river upon their mill site, because she was no party to the said proceedings, and is not bound by them.

The record shows that in August, 1855, the defendants commenced proceedings under the statute, in the district court of Page county, to obtain a license to build a dam across the Nodaway river, and to have assessed by a jury, the damages of the owners of the lands to be affected by the same.   To these proceedings, Andrew Lummery was made a party, and had due notice of the same; and upon the return of the inquisition, was duly summoned to show cause why the said license should not be granted.   No objection being made, a license was granted to defendants to build their dam eight and a half feet high. This license, defendants claim, gave them the right to flow back the

water of said river upon the lands of all persons made defendants in said proceeding.

Without the record in the suit at law before us, it is impossible for this court to determine the nature and character of the issues made therein by the parties. The injunction was granted by the district court, on the assumption that the rights of the complainants had been settled and determined in the suit at law. So, the court suppressed all the depositions taken by defendants, and refused to permit them to be read in evidence, on the ground that the matters concerning which the witnesses depose, had all been pleaded and adjudicated in the said suit.

As there was no prayer in complainant's bill to that effect, we think the district court went too far, in ordering defendants to remove their dam, and directing that in case the same was not removed in thirty days, the sheriff remove the same. All that complainants asked, was an injunction to restrain defendants from flowing back the waters of the Nodaway upon their property, and this was all the court was required to grant, even admitting that the facts alleged by the complainants, were all proved to the satisfaction of the court.

But we have not been able to arrive at the same conclusion as the district court, as to complainant's right to relief. The evidence before us does not satisfy us that the rights of the parties have been settled and determined, in any such sense, in the suit at law, as that a court of chancery should, upon the verdict and judgment alone, grant a perpetual injunction, as prayed in the petition, and granted by the court. The cause is before us for trial on appeal, in the same manner as if there had been no trial in the district court. And we are to declare, from the record before us, whether there is sufficient ground for awarding the the relief prayed.

We think the district court erred in excluding the depositions taken by defendants. These depositions show, that although the land on which the complainants claim to have a mill-site, was purchased of the United States, in the name of

Almira Lummery; yet it was paid for with money furnished by Andrew Lummery, who, for his own reasons, had it entered in the name of his wife, without her knowledge; that although it was so purchased in the wife's name, it had, in fact, been in possession of the husband long before; that he had applied at the government land office to enter the same by pre-emption; and that he had filed his claim so to pre-empt the same, and when the time, within which the pre-emption was required to be proved up, was about to elapse, because he could not prove up his pre-emption and purchase the land in his own name, fearful that it might be entered by some other person, directed the messenger, by whom he sent the money to the land office, to take the certificate of purchase in his wife's name. There is some attempt to show that the husband was indebted to the wife, or had used some of her money, and that by the purchase of this land in her name, he intended to repay her; but the thin veil with which he has contrived to cover his acts, has not served to conceal the real motive and design involved in them.

The purchase of the land in the name of the wife, was made during the progress of the proceedings instituted by the defendants, to obtain a license from the district court for the erection of their dam. Andrew Lummery was a party, and notified of these proceedings. He was, at the time, the ostensible owner of the land, being in possession of it, and claiming it by right of pre-emption. Whether the taking the title of the land in the name of his wife was, or was not, with the purpose of avoiding the effect of the proceedings on the writ of *ad quod damnum*, we think, that to give to it such operation, would be to encourage fraud and injustice. We think the complainants are, both of them, bound by the inquest of the jury, and by the judgment of the district court thereupon, granting license to defendants to erect their mill dam.

It is not made to appear in the record, what damages were awarded to the complainant, Andrew Lummery, to be paid by the defendants, for the right and privilege of flowing the

waters of the river back upon their land   That they acquired the right so to do, we can entertain no doubt—the proceedings under the writ of *ad quod damnum*, amounting to a condemnation of so much of complainant's land, and of their right thereto, as should be affected by the flowing back of water from defendant's dam, when raised to the prescribed height of eight and a half feet.   The evidence shows that the dam was not higher than eight and a half feet.

The complainants do not pretend, or claim, that they had erected a mill, or a mill dam, on their land.   They allege that they had a mill-site.   They had taken no steps to obtain from the district court a license to build a mill dam.   And their right to obtain such license may well be questioned, when it is considered that the license to the defendants, gave them the right to flow the water of the river, not only upon complainant's land, but over the lands of other proprietors lying upon the river, and above that of complainants.   Any right, therefore, that complainants could have derived from a license, if granted, must have been entirely subservient to those of defendants, which were prior in point of time.

If the proceedings on the writ of *ad quod damnum* conferred any right at all on defendants, it amounted to a license to them to flow the water of the river from their dam over the very point where the complainants claim to have a mill-site.   The complainants have not only shown no mill dam, but they show no right to erect one.   In this respect, the equity of defendants is not only older in respect to time, but better in point of right.

We suppose it is fairly to be gathered from the record, that there was a suit at law between the parties, about the flowing back of the waters of the river from defendant's dam upon the lands of complainants.   This suit was in right of Almira Lummery, the holder of the legal title to the land.   The defendants admit by their answer, that the suit was bought for two thousand dollars damages, for obstructing and delaying complainant's work, and destroying their mill-site by backwater, but allege that complainants claimed no other relief,

and that the damages awarded were in full satisfaction of the injury sustained; and that they were duly licensed and empowered to build their dam eight and a half feet high, and to flow back the water upon complainant's land. The complainants reply, that all questions as to the title of Almira Lummery to the land, and as to whether defendants had a license so to erect their dam eight and a half feet high, and flow back the water of said river upon complainant's, were put in issue and adjudicated in said suit at law; and that the damages accruing to complainants, were not foreseen and estimated by the jury, upon the inquest under said writ of *ad quod damnum.*

It is not shown in the record, what damages were awarded to complainants in said action; nor, in the absence of the record in the suit at law, can we undertake to determine definitely, what questions were adjudicated and settled by it. It is certain, however, that an action may have been brought, as alleged by complainants, and as admitted by defendants, and still no question put in issue or decided at all affecting defendants' rights under their license, and without settling any issue or matter upon which complainants can found their right to an injunction against defendants, or any claim to demolish their dam.

The statute authorizing the condemnation of land for mill sites, and the assessment of the damages of the proprietors of the land to be affected by the erection of the mill dam, under the writ of *ad quod damnum,* expressly provides that no inquest of a jury, nor any judgment thereon, shall bar any action which might have been maintained, if said act had not been passed, unless the prosecution, or action, was actually foreseen and the damages estimated upon the inquest. Sec. 8 of Act of Jan. 24, 1853.

The damages awarded to complainants may, as alleged by them, not have been foreseen and estimated by the jury on the inquest. In such event, the judgment for damages, is no ground for an injunction against the owners of the mill dam; it does not affect their rights under their license;

but is to be considered rather as compensation for injuries not foreseen or estimated by the jury upon the inquest, as permitted by the statute, to be recovered in such action at law; and, in this view, may be rather considered as a confirmation of the license granted to defendants.

The judgment and decree of the district court will be reversed, the injunction dissolved, and the complainants' bill dismissed.